[Crim. No. 356.   Second Appellate District.—March 22, 1915.]

## THE PEOPLE, Respondent, v. PHILIP A. KILFOIL, Appellant.

CRIMINAL LAW—RAPE—SUFFICIENCY OF EVIDENCE.—In this prosecution for rape committed on an unmarried female whose age was under sixteen years, it is held that every fact implied in the verdict and essential to the crime is supported by evidence which the jury might reasonably have believed to be true.

ID.—TRIAL—CONTINUANCE—SUFFICIENT AFFIDAVITS FOR.—Where upon a motion for a continuance of the trial of a criminal action, the affidavits failed to state facts which furnished any definite and satisfactory assurance that the witnesses therein named could or would be produced at a later time if the continuance were granted, it was not an abuse of discretion to deny the motion.

ID. — EVIDENCE — ILLICIT RELATIONS WITH DEFENDANT—INCONSISTENT STATEMENTS OF PROSECUTRIX.—Where in a prosecution for rape it was admitted by the prosecutrix on cross-examination that she had told another girl that she had had improper relations with but one person, not the defendant, no prejudicial error was committed in sustaining objections to a series of questions designed to compel admissions that on certain specified occasions the witness had been questioned about her alleged illicit relations with the defendant and on those occasions she had made statements inconsistent with her

present testimony as to the time when she first had such relations with the defendant.

ID.—EVIDENCE—CAPSULES TO PREVENT PREGNANCY—SUFFICIENT IDENTIFICATION.—Where the prosecutrix in such a case testified that the defendant gave her medicine for the purpose of preventing pregnancy, it was not error to admit certain capsules or pellets in evidence over objection on the ground of lack of identification, where she identified the exhibited capsules or pellets as the medicine given her by the defendant.

ID.—EVIDENCE—WANT OF CHASTITY OF PROSECUTRIX.—Where the prosecutrix is under the age of consent, proof of her relations with other men as tending to show want of chastity is immaterial.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—IMPROPER MODE OF CROSS-EXAMINATION OF DEFENDANT—WHEN NOT REVERSIBLE ERROR.—In this action it is held that the conduct on the part of the district attorney in his mode of cross-examining the defendant as to the testimony given by the latter before the grand jury concerning the medicine given to the prosecutrix, and concerning his refusal to assist the prosecutrix in informing her mother of her pregnant condition, was improper, but that upon the whole record in the case, it cannot be said that such misconduct resulted in a miscarriage of justice under section 4½ of article VI of the constitution.

ID.—INSTRUCTION TO JURY—WEIGHT OF TESTIMONY—POLICE OFFICERS AND DETECTIVES.—A proposed instruction separately designating the testimony of police officers and detectives who testified "on behalf of the state," and stating a rule of greater strictness in weighing their testimony than that of other witnesses, is properly refused.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—AVAILABILITY BEFORE CLOSE OF CASE.—A motion for a new trial on the ground of newly discovered evidence was properly denied, where such evidence consisted of a statement made by the prosecutrix to the district attorney about a month before the case was tried, and it was shown that such statement came into the hands of the defendant's counsel before the close of the case and no permission was asked for the recall of the prosecutrix for further cross-examination.

ID.—NEW TRIAL—DISCRETION.—Motions for new trial are addressed to the sound discretion of the trial court and its action will not be disturbed unless the record shows an abuse of such discretion, the presumption being that the discretion was properly exercised.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Jennings & Horton, and Walter V. Dysert, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was convicted of the crime of rape and sentenced to serve a term in the state prison at San Quentin. From the judgment, and from an order denying his motion for a new trial, he prosecutes this appeal.

The indictment charged that the crime was committed by the defendant on an unmarried female person, whom we shall call the prosecutrix, and whose age was under sixteen years. The story as contained in the record is a long one, covering three years' acquaintance between these two persons. The prosecutrix testified to facts which, if truly related, are sufficient, together with the abundant corroborating evidence, to sustain the verdict rendered by the jury. The testimony of the defendant and much other evidence was in strong conflict with that relied on by the prosecution. Every fact implied in the verdict and essential to the crime is supported by evidence which the jury might reasonably have believed to be true. Therefore, the verdict must not be disturbed unless the record shows errors which have prevented the defendant from having a fair trial and have thus produced an unjust conviction. The errors assigned and discussed in the principal brief of appellant's counsel and the main points involved therein are hereinafter set forth.

The court did not err in refusing to set aside the indictment. Whatever merits the motion for that purpose might have had, in view of the Penal Code rules formerly in force, were eliminated by the legislation of 1911 [Stats. 1911, p. 435], amending sections 995 and 895, and repealing sections 164, 896, 897, 898, 899, 900, and 901 of that code. We do not find in the decision in *People* v. *Anthony,* 20 Cal. App. 586, [129 Pac. 968], anything to support appellant's claim that section 895 of the Penal Code as amended in 1911 should be held to be unconstitutional.

The defendant moved for a continuance of the trial for the purpose of procuring evidence, and the motion was denied. The affidavits on which the motion was based referred to anonymous communications intimating that sundry unnamed persons while passing the home of the prosecutrix had heard

her crying and declaring that "it wasn't Phil," etc. One of
the affidavits is by one Leila Jones who, five days before the
trial, informed defendant's attorney that a similar hearsay
statement had been made to her by a girl whose name she did
not remember. The affidavits did not state facts which fur-
nished any definite and satisfactory assurance that such wit-
nesses could or would be produced at a later time if the con-
tinuance were granted. There was no abuse of discretion in
denying this motion. The court was authorized, on the show-
ing made, to find that defendant had not shown sufficient
diligence in searching for these witnesses.

The prosecutrix on her cross-examination admitted that she
had told another girl that she, the prosecutrix, had had im-
proper relations with one Albert Hall, but with no one else.
Thereupon a series of questions followed designed to compel
admissions that on certain specified occasions the witness had
been questioned about her alleged illicit relations with de-
fendant and that on those occasions she had made statements
inconsistent with her testimony on the direct examination at
this trial as to the time when she first had any illicit relations
with the defendant. It is earnestly contended in the brief
for appellant that the defendant was entitled to a cross-
examination of the witness on her testimony concerning the
time or times when such relations existed and that such cross-
examination was excluded. The record shows, however, that,
although the objections to the questions as first put to the
witness by defendant's counsel were sustained, the witness
was later permitted to answer other questions whereby virtu-
ally she admitted that she had made the statements referred
to in the questions which had first been excluded. Taking the
cross-examination in its entirety, it does not seem that any
prejudicial error occurred.

On cross-examination of prosecutrix the fact was brought
into the record that in March, 1914, she gave birth to a child.
The fact of the girl's pregnancy did not become known to
her mother until the mother's return in January from a visit
in the eastern states. On re-direct examination, being asked
about things done by defendant to assist in concealing her
condition from the mother, prosecutrix said that he gave her
medicine and told her that it would keep her from having a
baby. The district attorney exhibited to the witness certain
pellets or capsules and asked her whether they were the

things called medicine to which she had referred. She said they were; that the defendant had given them to her in an envelope to take home and she had taken some of them; and that those which were produced in court had been given by her to the district attorney. It is contended that the court erred in admitting these capsules as exhibits, over defendant's objection that no foundation had been laid to authorize their reception as evidence. We think that the identification was sufficient.

During the course of defendant's testimony in his own behalf, he denied that he had given any capsules or pellets to the prosecutrix, or any medicine for the purposes mentioned, and denied that he had ever had any improper relations with her. Also, he testified that at the time when he learned from prosecutrix the fact of her pregnant condition, shortly before her mother's return from the east, she told him that one Ed. Hall had given her some medicine and had told her not to worry, that that would bring her out of her trouble all right. On cross-examination of defendant, the district attorney questioned the defendant about the testimony that had been given by him as a voluntary statement before the grand jury, and obtained from him the admission that in that statement before the grand jury defendant had not mentioned the fact now testified to by him concerning the medicine which he said that the prosecutrix claimed to have received from Ed. Hall. Defendant said that he did not know why he did not mention this matter to the grand jury, other than that it did not occur to him to tell them. It is complained by his counsel that the mode of cross-examination and statements of the district attorney in conducting this cross-examination were improper. The cross-examination was a long one and at times was tinged with bitterness of language used by counsel on both sides, as well as by the witness. Appellant's counsel in their brief have directed our attention to forty-seven pages selected from the transcript wherein they claim that improper questions and remarks by the district attorney are shown, and we have examined those pages with these criticisms particularly in view. For the most part the charges of misconduct are not sustained, but in some instances they are established. Perhaps the most flagrant example is found at page 299. There, having first obtained an admission from defendant that he had urged the prosecutrix to tell her

27 Cal. App.—3

mother the truth about her condition and had refused to go and help break the news to her mother, the district attorney inquired: "But you were too cowardly to tell her yourself?" Defendant's counsel at once assigned this as misconduct; whereupon the district attorney said: "I withdraw the statement"; and the judge said: "Don't make any more remarks of that kind; the jury are instructed to disregard that remark or any other similar remark of counsel."

Again the district attorney propounded to the defendant a question designed to draw from him the admission that he had given certain testimony before the grand jury. After reading the testimony, of which there were several pages, the district attorney said: "Now, that is all the nastiness you repeated to the grand jury, isn't it?" On objection made, the district attorney substituted the words: "That is all the corruption you could think of." The court having sustained an objection the district attorney modified his question again by saying: "That is all of the unlawful doing or immoral acts that you could think of at the time you were before the grand jury, to tell the grand jury?" The objection was renewed on the same ground, that the question was improper and a prejudicial characterization of the subject-matter that had been read to the witness, and the objection was sustained.

There is no doubt that in these instances, and in some others less pronounced, the district attorney gave examples of conduct very different from that which should characterize the conduct of a prosecuting officer toward the defendant in trying an action of this kind, or in any criminal case. The correct rule of conduct has been insisted upon many times by the supreme court and by the district courts of appeal and some verdicts have been set aside on account of flagrant violations of duty in this respect. (*People* v. *Tufts,* 167 Cal. 266, [139 Pac. 78] ; *People* v. *Fleming,* 166 Cal. 357, [Ann. Cas. 1915B, 881, 136 Pac. 291].) In the Fleming case, 166 Cal. 381, ]136 Pac. 301], the court said: "In view of the very grave doubt as to the guilt of the defendant of the crime charged against him, and in view of the nature of the acts charged against defendant as shown by the testimony of the witnesses for the prosecution, we are of the opinion that, despite the general instructions of the court to the jury to the effect that they must base their verdict exclusively on the evidence, the conduct of the special prosecutor in the matters

we have been discussing, which clearly constitute misconduct on his part, contributed materially to the verdict that was rendered. (See *People* v. *Derwae,* 155 Cal. 592, [102 Pac. 266].) So believing, under the circumstances we have heretofore stated, we consider the case one in which section 4½ of article VI of the constitution contemplates a reversal on account of an error or erroneous procedure resulting in a 'miscarriage of justice.' '' The principle set forth in the foregoing statement is applicable here and the question presented is whether or not there is, upon the whole record including the evidence, such a doubt of the guilt of the defendant, and whether the misconduct complained of bears such an important relation to the entire case that it contributed materially to the verdict that was rendered. Can we say from our examination of the entire case that the errors complained of resulted in a miscarriage of justice? Our opinion is that in this case the effect of the misconduct that we have referred to was materially reduced by the rulings of the court and the instructions then and thereafter given to the jury; and that it cannot reasonably be held that without these actions of the district attorney the verdict would have been different from that which was returned by the jury. It is to be regretted, however, that prosecuting officers should ever so conduct themselves toward a defendant as to give an excuse for raising these questions.

As already noted, the fact that prosecutrix gave birth to a child was first shown by evidence brought out at the instance of the defendant. This was followed by an offer to prove by testimony of the witness Mrs. Frasier that in May or June, 1913, she saw the prosecutrix have intercourse with Albert Hall in a hammock. This testimony was excluded. The ruling was correct. If the fact of pregnancy occurring at the period of time in question had been shown by evidence introduced into the record at the instance of the prosecution, this testimony offered by defendant would have been admissible. The rule is stated in *People* v. *Currie,* 14 Cal. App. 67, [111 Pac. 108], as follows: ''It is well settled that in cases of this character, where the prosecutrix is under the age of consent, her relations with other men as tending to show want of chastity are immaterial. Here, however, the district attorney had brought out the fact in chief that she was found to be pregnant after defendant's intercourse with her as she testi-

fied, the object being to corroborate her testimony by that important fact. . . . Defendant had a clear right to discredit her testimony by showing on cross-examination whether her pregnancy was due to her relations with defendant or might not have been caused by some other person.'' The defendant could have no better right to show that the prosecutrix became pregnant and that some other person than defendant was responsible for such pregnancy, than to have shown the mere fact of her intercourse with other men if there had been no subsequent pregnancy.

It is contended that the court erred in refusing to give to the jury certain instructions requested by the defendant. Several of these instructions, though not in the precise words requested, were included in other instructions given by the court. When, under these circumstances, counsel impose upon this court the duty of considering alleged error in the refusal of an instruction, the argument should not be urged without reference to the instructions given on the same proposition, nor as if no such instructions had been given. This is a difficulty that we have to meet in our consideration of many of the appeals presented here in criminal cases, where a little more industry and candor would aid in the proper disposition of cases, and many of the objections that we have to consider as to the refusal of instructions would not be presented at all. For example, it was stipulated that the defendant's reputation for truth, honesty, and integrity in the community where he resides, is good. Defendant's counsel complain because the court refused a certain proposed instruction that this fact stipulated must be found as true. After considering this point, and the authority cited, we at last discover among the many instructions given, one wherein the court instructed the jury directly with respect to that stipulation, and did so in language more strongly favorable to the defendant than was asked for by him.

The court did not err in refusing to give an instruction separately designating the testimony of police officers and detectives who testified ''on behalf of the state,'' and stating a rule of greater strictness in weighing their testimony than in weighing the testimony of other witnesses. The court did not err in refusing a proffered instruction setting forth defendant's theory that the prosecution was a trumped-up charge, the outgrowth of a conspiracy against him. The pro-

posed instruction stated no rule of law other than that the evidence concerning this claim should be considered as part of the evidence in the case and that the burden of proof as to defendant's guilt remains with the prosecution all through the case. The law on this question was entirely covered by the instructions given by the court to the jury.

It is contended that the court should have granted defendant's motion for a new trial on the ground of newly-discovered evidence. This newly-discovered evidence is set forth in an affidavit of the defendant and has reference to a statement made by the prosecutrix to the district attorney about one month before the case was tried. Affiant says that this typewritten statement came to his hands on May 27, 1914, which was nine days after rendition of the verdict. He says that "not until after the trial of said cause had been concluded did affiant ever see said statement or know its contents, nor did affiant have access thereto during said trial or before said trial." So far as this shows, defendant may have known that a written statement had been made by the prosecutrix at the time mentioned. If he or his counsel had that knowledge during or before the trial, they had the same right then to have it produced for use in court as they would have for the purposes of a second trial. In their reply brief, counsel for defendant admit that they procured this statement after the prosecution had rested its case. This implies that they had it during the remainder of the trial; yet they did not ask permission to recall the prosecutrix for further cross-examination. Looking at the contents of the statement, we find that the principal use that could have been made of it would have been to show thereby that prosecutrix said that her first act of sexual intercourse with defendant was after the death of his sister Lucy, which death occurred in February, 1913, and that this was inconsistent with her testimony at the trial wherein she said that her illicit relations with the defendant first occurred nearly two years before that time. Motions for new trial are addressed to the sound discretion of the trial court and its action will not be disturbed unless the record shows an abuse of this discretion, the presumption being that the discretion was properly exercised. "The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge, who, in the

light of the knowledge afforded by presiding at the trial, is especially qualified to determine as to the probable effect of such evidence.'' (*People* v. *Feld,* 149 Cal. 464, 474, [86 Pac. 1100].) In the trial of this case it was shown that there were some inconsistencies between the testimony given by the prosecutrix at the trial and some statements previously made by her. Connected with these same matters, the court might well have been of the opinion that the additional circumstance referred to in this affidavit on motion for new trial would not be sufficient to materially affect the weight that would be given to her testimony by the jury; in other words, that the jury was authorized to believe the essential facts to have been as she stated them to be, and that the inconsistent statement made by her in her statement to Mr. Ford was not likely to throw any new light upon her character and reliability as a witness. However this may be, the failure of appellant to avail himself of his opportunity to use the statement when he discovered it, while the case was still open for evidence, is alone a sufficient reason for denying a new trial, so far as that ground of the motion (and no other was presented) is concerned.

The judgment and order denying motion for a new trial are affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 20, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 20, 1915.